## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:   Kevin J. Goodspeed,                                   BKY 11-37732

                            Debtor.                            Chapter 7

-----------------------------------------------------------

Terri A. Running, Trustee,

                            Plaintiff,                         ADV 13-3239

v.

Michele Dolan f/k/a Michele D. Goodspeed,                      **ORDER**

                            Defendant.

---

This matter came before the court on the plaintiff-trustee's second amended complaint pursuant to 11 U.S.C. §§ 541, 542, 544(b), 550 and 551 and Minn. Stat. §§ 513.44, 513.45 and 513.47, to avoid and recover from the defendant an alleged fraudulent transfer.[1]  At the conclusion of the trial, both parties were allowed time to file supplemental post-trial briefs.[2]  Both parties did so and the matter was thereafter taken under advisement.  For the reasons and as more specifically provided below, none of the relief requested by the plaintiff-trustee is granted.  Judgment shall be entered in favor of the defendant on Counts I and II of the trustee's complaint.

### PROCEDURAL BACKGROUND

This controversy presents a story of real estate endeavors undertaken together by spouses, followed by a decision to dissolve their marriage, and now acrimonious disagreement regarding certain facts about those endeavors.  Their marriage dissolution (not yet resolved in pending state court litigation) has inevitably complicated the outcomes of those earlier

---

[1] Following analysis of the issues herein pursuant to 28 U.S.C. § 1334(c)(1), the court abstained, at the commencement of the trial, from Counts III and IV of the complaint, seeking, respectively, imposition of a constructive trust or a resulting trust.  The determination of those claims involves questions of state law best resolved by the family court presiding over the related, suspended marital dissolution proceeding involving the debtor and the defendant, and are not questions essential to the claims arising under bankruptcy law in this matter.  See Stabler v. Beyers (In re Stabler), 418 B.R. 764, 769 (8th Cir. BAP 2009); Foss v. Hall County Child Support Office (In re Foss), 328 B.R. 780, 783-84 (8th Cir. BAP 2005).  Moreover, the family court expressly reserved the allocation of property interests between the debtor and the defendant.  See note 20, infra.

[2] To the extent that the trustee made arguments based upon the doctrine of judicial estoppel, that theory was conceded or insufficiently supported in the trustee's post-trial brief.

transactions executed during the marriage, especially in the context of the husband's intervening bankruptcy case.  In this proceeding, the trustee of the husband's chapter 7 bankruptcy estate is seeking to avoid, as fraudulent, a purported transfer made to the non-debtor wife during the marriage (the "Transfer").

FACTUAL BACKGROUND[3]

The debtor, Kevin Goodspeed, and the defendant, Michele Dolan, married in 2002.  At that time, Dolan owned a home in St. Paul (the "St. Paul Property"), which was encumbered by a mortgage lien of approximately $56,000, securing a note for $56,000 in favor of Dolan's mother.  Goodspeed owned a home located in Robbinsdale (the "Robbinsdale Property"), which was encumbered by a mortgage of approximately $58,000.

In February 2003, Goodspeed refinanced the Robbinsdale Property with a note and mortgage of $113,250 to World Savings, and withdrew approximately $50,000 in equity out of the property and used some of those funds to make repairs to the Robbinsdale Property.  He loaned $20,000 of those funds to Dolan's cousin.  Dolan was not a co-obligor on the note and mortgage of $113,250 to World Savings for the Robbinsdale Property.

On October 14, 2004, Dolan executed a quitclaim deed creating a joint tenancy in the St. Paul Property with Goodspeed.  The deed was recorded on October 15, 2004.  On October 20, 2004, Dolan's mother forgave the indebtedness on the St. Paul Property and a satisfaction of mortgage was duly filed.  On October 25, 2004, Goodspeed signed a note for $200,000 secured by a mortgage of $200,000 against the St. Paul Property.  Dolan was not a co-obligor on the note, but consented to the mortgage.[4]

On November 4, 2004, Dolan and Goodspeed used $125,096 of the mortgage proceeds from the St. Paul Property to purchase real estate located in Shakopee, Minnesota (the "Shakopee Property").  The purchase of the Shakopee Property was a cash purchase; no mortgage loan financing was obtained.  The Shakopee Property was titled in Dolan's and Goodspeed's names as joint tenants, and it was unencumbered until 2007, as set forth below.

In April 2006, Goodspeed sold the Robbinsdale Property.  In March 2007, the St. Paul

---

[3]  The findings of fact set forth in this section, and throughout this decision, are drawn from the stipulation of facts and as such not disputed, or, are otherwise supported by the unequivocal record or by the trial testimony deemed credible.

[4]  There is no evidence in the record to indicate whether Dolan signed as a mortgagor, but the parties stipulated, and the evidence supports, that she did consent to it and to all of the mortgages and transactions involved in this matter.  According to testimony at trial, Goodspeed had the creditworthiness to qualify for the loans and Dolan did not, and that is why she was not a borrower on any of the notes.

Property was appraised at a value of $350,000,[5] and Goodspeed refinanced the loan and mortgage against the St. Paul Property with Wells Fargo Bank, N.A., increasing the total liability to $280,000, and withdrawing cash of $76,678. Goodspeed was the sole obligor on the promissory note of $280,000 to Wells Fargo Bank, N.A.

Around the same time in 2007, the tax assessed value of the Shakopee Property was $150,300 and Goodspeed took a home equity loan of $121,000 against the Shakopee Property. He was the sole obligor on the note for the home equity loan of $121,000 against the Shakopee Property, and he withdrew cash of $112,330.

On April 5, 2007, the combined cash proceeds of $189,000 from the equity loan on the Shakopee Property and the refinance loan of the St. Paul Property were used (constituting the "Transfer") to purchase real estate in Hudson, Florida (the "Florida Property"). Before the Transfer, Dolan and Goodspeed had paid off all of their other debts (not including the debt on the Properties) using the remaining cash equity withdrawn from the various Properties.[6]

The Florida Property was titled solely in Dolan's name. Certain expenses for improvements to the Florida Property were charged to the parties' joint account at Wells Fargo in the spring of 2007. The Florida Property was rented in June 2007, and monthly rents were deposited into the parties' joint account at Wells Fargo.

The parties separated in 2010, and on March 8, 2010, Dolan filed a petition for dissolution of marriage.[7] Goodspeed thereafter received no rental income from the Florida Property. However, Dolan continued to receive rental income from the Florida Property.

The marriage of Goodspeed and Dolan was dissolved pursuant to a "Stipulated Partial Judgment and Decree to Dissolve Marriage" dated April 15, 2013, but there was no order entered identifying the parties' property interests or dividing and awarding marital assets.[8]

## DISCUSSION

---

[5] To the extent that the parties, at the time of trial, disputed this valuation, it is not a relevant issue, as discussed more fully later in the decision. See note 15, infra.

[6] The total equity obtained from the Properties amounted to approximately $439,008 ($50,000 from Robbinsdale, $200,000 from St. Paul, another $76,678 from St. Paul, and at least $112,330 from Shakopee). Of that total, $125,096 was used to purchase the Shakopee Property, $189,000 was used to purchase the Florida property, and $20,000 was loaned to a relative, leaving at least approximately $104,912, which was more than necessary to satisfy, and that was used to satisfy, the other debts and expenses of the debtor and the defendant.

[7] See Ramsey County District Court, State of Minnesota, Goodspeed v. Goodspeed, Case No. 62-FA-10-2501.

[8] The Stipulated Partial Judgment and Decree to Dissolve Marriage offered and received into evidence is an unexecuted document. However, there is no disagreement that the judgment and decree was entered in the state court proceeding, and accordingly it is presumed to exist in valid form in that case.

*Governing Bankruptcy Code Provision*

In this case, the trustee asserts a fraudulent transfer avoidance action under state law. The Bankruptcy Code allows for avoidance under state law pursuant to § 544(b), which provides:

> (b)(1)  Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under <u>applicable law</u> by a <u>creditor holding an unsecured claim</u> that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (emphasis added).

*The Predicate Creditor Requirement*

Section 544(b) requires both satisfaction of the requirements of the applicable state law and the additional requirement that for any avoidance of a transfer under this section the trustee must show that there is "a creditor holding an unsecured claim that is allowable under section 502 of this title...."  Section 502 adds a timing reference, that is, the creditor must be holding the claim as of the date of the filing of the petition.  Taken together, these requirements are often referred to as the predicate creditor, and they have been discussed at length by various courts.[9]

The second amended complaint provides the following entries with respect to creditors:

Paragraph 22.  At all relevant times there existed at least one creditor of the Debtor.

Paragraph 27.  The Transfer of the Debtor's interest in the Mortgage Proceeds to the Defendant
                     was made with the intent to hinder, delay or defraud creditors of the Debtor that

---

[9]  "[T]he existence of a predicate creditor and its position at the relevant date will determine whether a trustee even has the right to avoid a particular transfer." <u>In re Petters Co., Inc.</u>, 495 B.R. 887, 895 (Bankr. D.Minn. 2013).  "To exercise her § 544(b)(1) avoidance power, the trustee must show that the transfer is voidable under state law by at least one unsecured creditor of the bankruptcy estate with an allowable claim." <u>Id.</u>, citing <u>In re Marlar</u>, 267 F.3d at 753; <u>In re Mirant Corp.</u>, 675 F.3d 530, 534 (5th Cir. 2012).

"In order to avail himself of the avoidance powers contained in section 544(b), the trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim who could avoid the transfer in question under" applicable state law.  <u>Stalnaker v. DLC, Ltd. (In re DLC, LTD.)</u>, 295 B.R. 593, 601-02 (8th Cir. BAP 2003), *aff'd* <u>Stalnaker v. DLC, LTD.</u>, 376 F.3d 819, 823 (8th Cir. 2004) ("11 U.S.C. § 544(b) authorizes the trustee to exercise an existing unsecured creditor's right to avoid a transfer if the creditor holds such a right under non-bankruptcy law"); <u>In re Petters Co., Inc.</u>, 495 B.R. at 895, citing <u>In re Marlar</u>, 267 F.3d at 754.  "However, it must be 'an actual unsecured creditor [of the debtor in the case,] holding an allowable unsecured claim.'" <u>In re Petters Co., Inc.</u>, 495 B.R. at 895, citing <u>In re Wintz Cos.</u>, 230 B.R. 848, 859 (8th Cir. BAP 1999) (quoting <u>Sender v. Simon</u>, 84 F.3d 1299, 1304 (10th Cir. 1996) (interior quotes and citation omitted)).

existed at the time of the Transfer.

These statements are insufficient to establish the existence of a predicate creditor and were denied in the answer. See e.g., In re Petters, 495 B.R. 887, 895-901 (Bankr. D.Minn. 2013).  Had a Rule 12(b)(6) motion to dismiss been brought, with nothing more, it likely would have been granted.[10]  The parties' pre-trial stipulation also does not identify with particularity any creditors of the debtor as of the time of his bankruptcy petition filing.  Moreover, nothing was expressly presented and argued at trial specifically to demonstrate the existence of a named, qualified predicate creditor of the debtor, as of the time of the petition, to satisfy these requirements.

However, the petition, schedules, statement of financial affairs and claims docket which were admitted into evidence at trial pursuant to stipulation suggest that a predicate creditor exists.  Assuming *arguendo* then, that the existence of the required predicate creditor is sufficiently established, and to forestall any future potential arguments regarding the predicate creditor requirement, the substantive elements applicable in this adversary proceeding under state law as asserted by the trustee have been reviewed, as set forth below.  The ultimate outcome of this case is based on the failure of the insolvency elements under the applicable state law.

*Fraudulent Transfer/Constructive Fraud Under MUFTA*

In this case, the applicable state law is the Minnesota Uniform Fraudulent Transfer Act ("MUFTA").  Minn. Stat. §§ 513.41-513.51.  The purpose of MUFTA is "to prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." Reilly v. Antonello, 852 N.W.2d 694, 699 (Minn.App. 2014), citing Citizens State Bank Norwood Young Am. V. Brown, 849 N.W.2d 55, 60 (Minn. 2014).

In Counts I and II of the amended complaint, the trustee seeks to avoid and recover, for the benefit of the bankruptcy estate, the debtor's Transfer of his alleged interest in the equity from the St. Paul and Shakopee Properties to the defendant (to purchase the Florida Property).

Under Count I, the trustee seeks avoidance of the Transfer pursuant to Minn. Stat. § 513.45(a) as a transfer fraudulent as to present creditors.[11]  Under Count II, the trustee seeks

---

[10]  A '[t]rustee's generic pleading as to the existence of a predicate creditor does not satisfy Rule 8(a)." In re Petters, 495 B.R. at 901.  See Fed. R. Civ. P. 8(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7008.  In order to "[t]o plead [her] standing to sue to set aside a transfer to any defendant as fraudulent under Minnesota law, the Trustee must identify by name, in [her] complaint, at least one unsecured creditor with a claim allowable against the estate whose standing [s]he uses to sue that defendant, which creditor would have had the right to sue to avoid that transfer on the date that that Debtor filed for bankruptcy relief." Id., at 900-01.

[11]  Count I of the trustee's complaint is pleaded generally under both §§ 513.44 and 513.45, including allegations that the Transfer at issue in this matter "was made with the intent to hinder, delay or defraud creditors of the Debtor that existed at the time of the Transfer," and that the Transfer "was also made without the Debtor receiving reasonably equivalent value in exchange for the Transfer, and he was rendered insolvent as a result of the

avoidance of the Transfer as a transfer fraudulent as to present and future creditors pursuant to Minn. Stat. § 513.44(a)(2).

*COUNT I*

Minnesota Statute § 513.45(a) provides:

(a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn. Stat. § 513.45.

 "The act defines 'debtor' as 'a person who is liable on a claim' and defines 'creditor' as 'a person who has a claim.'" Reilly v. Antonello, 852 N.W.2d at 698, citing Minn.Stat. § 513.41(4), (6).

It is undisputed that the debtor and the defendant used equity proceeds of the various properties, in excess of the amount used to purchase the Florida Property, to pay off their debts. But, of course, the banks funding the equity and refinancing loans remained unsatisfied, and the banks' claims arose before the alleged Transfer was made. Therefore, it is presumed that, by definition, those banks constituted present creditors at the time of the Transfer for purposes of § 513.45(a).

"[T]ransfer" as used in § 513.45(a) is defined broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other

---

transaction." Proceeding under § 513.44(a)(1), for actual fraud, includes an intent element and invokes a nonexclusive list of badges of fraud under subsection (b). See Minn. Stat. § 513.44(a)(1) and § 513.44(b). Consistent with the record developed and the arguments made during the proceedings, the court finds that if the trustee had originally intended to proceed based upon actual fraud under § 513.44(a)(1), that basis for the cause of action under Count I was since abandoned. Moreover, there is scant evidence to support intent here in any event. Count I also pleads the Transfer as arising under § 513.44(a)(2), but that section is specifically pleaded in Count II and will be reviewed in the discussion of Count II.

Likewise, while Count I was pleaded in the complaint with reference only generally to § 513.45 but with allegations specifically under § 513.45(a), the trustee's trial brief characterized Count I as actionable under both § 513.45(a) and (b). Count I was predominantly developed and argued in this case, and is analyzed at length in this decision, under § 513.45(a). Section 513.45(b) provides for avoidance of a fraudulent transfer made to an insider for an antecedent debt when the debtor was insolvent and the insider had reasonable cause to believe that the debtor was insolvent. See Minn. Stat. § 513.45(b). To the extent that the trustee intended to seek relief under § 513.45(b), a claim under § 513.45(b) would fail in any event because the debtor was not insolvent, which is an essential element of § 513.45(b). Insolvency is more fully discussed in this decision under the analysis of Count I.

encumbrance." Reilly v. Antonello, 852 N.W.2d at 699, citing Minn. Stat. § 513.41(12).

Assuming that the property in question, in this case the equity proceeds from the St. Paul and Shakopee Properties, constituted an asset of the debtor,[12] and that such asset was disposed of or parted with pursuant to the MUFTA definition of transfer, the remaining elements of § 513.45(a) are reasonably equivalent value and insolvency.

Value is defined for purposes of MUFTA as follows:

(a)     Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Minn. Stat. § 513.43(a).

The debtor was solely liable for the debts that procured the equity. The debts were secured by the real properties providing the equity, but only the debtor was liable on the notes. The defendant consented to the mortgages, but she was not a borrower on the notes.[13] The Transfer of much of that equity was into a property titled solely in the name of the defendant. Accordingly, or so the trustee argues, for purposes of the § 513.45(a) analysis, the lack of reasonably equivalent value received by the debtor in exchange for the Transfer is self-evident as the debtor received nothing. But, that does not consider the value of the defendant's asserted non-marital interest in the equity.

The defendant contends that in order to answer the question of reasonably equivalent value with respect to the Transfer, the value of what the debtor transferred must first be determined. In this case, the defendant argues, the value of what the debtor transferred is zero because the equity funds transferred constituted the defendant's non-marital asset. Accordingly, the debtor received nothing in exchange for the Transfer because the debtor gave nothing and therefore there was an equal exchange, and reasonably equivalent value would therefore be a non-issue in this case. As discussed below, however, the determination of value exchanged, if any, will not be made by this court. It is unnecessary to do so because the element of insolvency under § 513.45(a) is not met.

Insolvency is the last element to be considered to resolve Count I. Insolvency is defined

---

[12]  Whether the equity proceeds actually constituted an asset of the debtor, and the uncertainty of that question at present, are issues separately and more fully discussed later in this decision.

[13]  "Minnesota law generally protects a spouse's interest in homestead property by restricting the ability of one spouse to convey an interest without the consent of the other spouse." Grimlie, 439 B.R. at 721, citing Minn. Stat. § 500.19, subd. 4; Minn. Stat. § 507.02 (providing that, with certain exceptions, if an owner of a homestead is married, no conveyance of the homestead shall be valid without the signatures of both spouses).

for purposes of MUFTA as follows:

(a)    A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation.

(b)    A debtor who is generally not paying debts as they become due is presumed to be insolvent.

Minn. Stat. § 513.42.

Under § 513.45(a), for a transfer to be fraudulent, the debtor must have been insolvent at the time of the Transfer or he must have been rendered insolvent as a result of the Transfer. As recited above, there are two definitions, or tests, for insolvency. The first test, the test under § 513.42(a), and commonly referred to as the balance sheet insolvency test, is not satisfied in this case. The parties contend that the insolvency issue turns on whether the debtor can claim all, or only half, of the value of the St. Paul and Shakopee Properties, which were held by the parties in joint tenancy, as an asset on the debtor's financial balance sheet as of the time of the Transfer.[14] The MUFTA balance sheet insolvency test, however, requires an analysis subject to specific definitions of assets and debts.

MUFTA defines "asset" as property of a debtor, "but the term does not include: (i) property to the extent it is encumbered by a valid lien; (ii) property to the extent it is generally exempt under nonbankruptcy law; or (iii) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Minn. Stat. § 513.41(2).

As encumbered interests of the debtor at the time of the Transfer, only the Properties' equity available to the debtor is an asset for purposes of the Transfer and the insolvency test. Minn. Stat. § 513.41(2)(i). But, that limited equity interest may be excluded from the definition of "asset" if it is exempt under nonbankruptcy law. Minn. Stat. § 513.41(2)(ii). See Citizens State Bank Norwood Young American v. Brown, 849 N.W.2d at 65, citing Minn. Stat. § 513.41(2)(ii) ("Because the [MUFTA] definition of 'insolvent' uses the term 'asset,' exempt property is not included in determining" insolvency).

"Debt" is defined as "liability on a claim," Minn. Stat. § 513.41(5). But, for purposes of insolvency, MUFTA provides that "[d]ebts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset." Minn. Stat. § 513.42(e). Without this provision, a balance sheet would not be balanced; it would exclude assets while including related debt.

At the time of the Transfer, the debtor and the defendant occupied the St. Paul Property

---

[14]  The balance sheet admitted into evidence at trial included only these two Properties as assets of the debtor.

as their homestead.  Pursuant to Minn. Stat. § 513.41(2)(i) and (ii), the property and any equity in that property, as an exempt asset, cannot be included in the insolvency calculation.[15]  Pursuant to § 513.42(e), the debt on the St. Paul Property also cannot be included in the insolvency calculation.  Thus, the question of whether half or all of the value of the St. Paul Property may be counted on the debtor's balance sheet is irrelevant for purposes of this insolvency determination.

Restated and in summary, the St. Paul Property is not an asset in determining whether the debtor was insolvent because: (a) if the property and debt values are equivalent then the property is not an "asset" pursuant to § 513.41(2)(i); or (b) if there is some equity then the equity is exempt and thus not an "asset" pursuant to § 513.41(2)(ii).  The related debt is also not to be considered in determining insolvency.  Minn. Stat. § 513.42(e).

Likewise, the court does not need to decide whether the debtor could properly claim all or only half of the value of the Shakopee Property on his balance sheet.  The approximate value of the Shakopee Property around the time of the Transfer was $150,300.[16]  Applying Minn. Stat. § 513.41(2)(i), the Shakopee Property does not constitute an asset for purposes of MUFTA to the extent that it is encumbered by a valid lien.  The secured debt against that property at the time of the Transfer was $121,000.  Pursuant to Minn. Stat. § 513.42(e), as an obligation secured by a valid lien on property not included as an asset, that debt is not to be included in the insolvency determination under MUFTA.  Therefore, we are left with equity of $29,300 included on the debtor's balance sheet as the only entry reflecting the Shakopee Property.

The only other asset of the debtor at the time of the Transfer (identified by oral testimony at trial) was a boat worth approximately $10,000.  Thus, for purposes of the balance sheet insolvency test, the debtor's assets were $29,300 of equity in the Shakopee Property plus a $10,000 boat.  On the debt side of the balance sheet, there is zero.  The debtor had no other debts at the time, or at least no evidence established any, and the testimony at trial was undisputed that the debtor's non-mortgage related debts were all paid.  Accordingly, the debtor was not insolvent at the time of the Transfer or as a result of the Transfer under Minn. Stat. § 513.42(a).

The second insolvency test, the test under § 513.42(b), also was not satisfied in this case.

---

[15]  Under either the 2006 or the 2007 exemption limit, the $70,000 available equity in the St. Paul Property at the time of the Transfer was exempt pursuant to Minn. Stat. § 510.02, based on estimated market value of $350,000 and debt against it of $280,000.  See Torgelson v. Real Property Known as 17138 880th Ave., Renville County, 749 N.W.2d 24, 26 (Minn. 2008), citing Minn. Const. art. I, § 12; Minn. Stat. § 510.01; Deutsche Bank Nat. Trust Co. v. Petersen, 748 N.W.2d 306, 309 (Minn.App. 2008), citing 2007 Minn. Laws ch. 105, § 2, 106 § 11 (codified at Minn.Stat. § 510.02, subd. 1 (Supp. 2007)); Kipp v. Sweno, 683 N.W.2d 259, 266 (Minn. 2004); Baumann v. Chaska Bldg. Ctr., Inc., 621 N.W.2d 795, 799 (Minn.App. 2001).  To the extent that the parties do not agree on the estimated market value, their difference in opinion is not enough to change the outcome; a higher value was not asserted, and no lower value suggested at trial was below the amount of the debt.

[16]  This is the stipulated tax value.  There was no evidence that the value was less than the mortgage debt, and there was credible evidence that the value significantly exceeded the debt, and likely the tax value.  Bottom line, there was equity in the Shakopee Property and the exact amount of that equity does not affect the outcome.

Notwithstanding the trustee's reliance on circumstantial evidence such as tax returns to indicate the unlikelihood of the debtor's ability to pay at the time, the evidence established that the debtor was, in fact, generally paying his debts as they became due at the time of the Transfer and for a number of years following the Transfer.  The evidence also unequivocally established that the cause of the debtor's financial distress and eventual need for bankruptcy relief was not the Transfer, but primarily the divorce commenced approximately three years after the Transfer, and the financial stress naturally resulting from separating the formerly combined marital household.

*COUNT II*

Minnesota Statute § 513.44(a)(2) provides:

(a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Minn. Stat. § 513.44(a)(2).

The elements under § 513.44(a)(2) are largely the same as those under § 513.45(a), except they apply with respect to present and future creditors, and the insolvency test is akin to the § 513.42(b) paying-debts definition.  To the extent that the trustee pleaded the complaint, in part, using the language of § 513.44(a)(2)(i), it was not an argument credibly developed at trial and is not supported by the record in any event, based upon the debtor's actual continuing ability to fund all of his ongoing obligations for years following the Transfer.

There is also no evidence to suggest that, at the time of the Transfer, the debtor intended to incur, or believed or should have believed that he would incur, debt beyond his ability to pay as due, as is required for a viable claim under § 513.44(a)(2)(ii).  In fact, as already noted, the debtor did not fail to generally pay his debts as they came due for the three years between the Transfer and the collapse of the marriage.  The record supports that the divorce, and the financial difficulties of actual separation, and not the Transfer or the other transactions involved here, ultimately caused the debtor to file bankruptcy.

-10-

Accordingly, the trustee's complaint fails on both Counts I and II for failure to establish the requisite insolvency under Minn. Stat. §§ 513.44 and 513.45.[17]  Judgment will be entered in favor of the defendant on both counts.

*Asset of the Debtor?*

 "The question remains ... whether [the] property constitutes an 'asset' [of the debtor] so that its disposition might then qualify as a 'transfer.'" In re Wintz Companies, 230 B.R. 848, 860 (8th Cir. BAP 1999). "Where the term 'asset' does not apply to property which has been conveyed, neither then does the MFTA." Id. (citations omitted).

Even if the trustee's complaint did not fail based upon the lack of the debtor's insolvency under MUFTA, it could still fail if, under other applicable Minnesota law, the Transfer never involved a transfer of an asset of the debtor in the first place.  The defendant contends, and the record may support, that the equity used to purchase the Florida Property was her non-marital property, derived and traced from the St. Paul Property, which she claims never stopped being her non-marital property.

Accordingly, there is cause to question, but this court need not and will not decide, whether the loan proceeds used to purchase the Florida Property in fact even constituted an asset of the debtor, in whole or in part, at the time of that transaction.   Those funds may have been, entirely or partially, non-marital property of the defendant.  That the parties held the St. Paul and Shakopee Properties in joint tenancy at the time of the transfer does not end the inquiry.[18]

In this case, the defendant acquired the St. Paul Property before she married the debtor, and the funds used to satisfy the pre-marital loan and mortgage on the St. Paul Property may

---

[17]  There is a general presumption of fraud with respect to transfers between spouses, and when there is a transfer "between spouses, the burden of proving that the transfer was not made fraudulently is on the transferee." Reilly v. Antonello, 852 N.W.2d at 700, citing State Bank of New London v. Swenson, 197 Minn. 425, 428, 267 N.W. 366, 367–68 (1936). Whether the burden is upon the trustee, or shifted to the defendant as the alleged transferee-spouse according to the presumption with respect to transfers between spouses, the evidence presented in this case conclusively demonstrates the debtor's solvency for purposes of the applicable MUFTA provisions.

[18]  Notwithstanding the clear and well-settled meaning of a joint tenancy interest in general (*see* Gau v. Hyland (Application of Gau), 41 N.W.2d 444 (Minn. 1950); Greiger v. Pye, 210 Minn. 71, 297 N.W. 173 (Minn. 1941); Papke v. Pearson, 203 Minn. 130, 280 N.W. 183 (Minn. 1938); In re Estate of Grote, 766 N.W.2d 82 (Minn. App. 2009); O'Hagan v. United States, 86 F.3d 776 (8th Cir. 1996); 7 Richard R. Powell, Powell on Real Property § 51.01[1] (Michael Allan Wolf, ed. 2000); 48A C.J.S. Joint Tenancy § 24 (2004)), Minnesota law provides that "merely transferring title from individual ownership to joint tenancy does not transform nonmarital property into marital property." See Barton v. Barton, 2014 WL 902718, 3 (Minn. App. 2014) (unpublished), citing McCulloch v. McCulloch, 435 N.W.2d 564, 568 (Minn. App. 1989).  "[R]ather, it [is] the ... donative intent that change[s] the nature of the ownership interests." Id.  See also Risk ex. rel. Miller v. Stark, 787 N.W.2d 690, 696 (Minn. App.2010) (stating that "[s]imply routing [nonmarital] funds through a joint account does not transform non-marital property into marital property") (quotation omitted), review denied (Minn. Nov. 16, 2010), cited in Barton v. Barton, 2014 WL 902718.  "Nonmarital property includes property 'acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse.'" Barton v. Barton, 2014 WL 902718, 1.

have been, as alleged by the defendant, either gifted solely to her or inherited solely by her (by debt forgiveness). The defendant contends both that the St. Paul Property and the cash proceeds subsequently derived therefrom were, remained, and continue to be traceable as non-marital property. She claims that the quitclaim deed executed in 2004 to create a joint tenancy with the debtor in the St. Paul Property was solely for convenience, to permit the debtor to borrow on a note subject to a mortgage against the St. Paul Property, because the defendant herself lacked the creditworthiness to qualify for a mortgage loan.

The debtor claims that he and the defendant intended to purchase and own the Florida Property together in joint tenancy, and that he believed that they did own that property together and that it was titled in both of their names as joint tenants. Of the funds that flowed from the equity of the various properties, some part was used to pay off debts of the husband and the wife, either together or individually, and some part was used for improvements to some of the properties. The original and appreciation values of the properties must necessarily be attributed to the debtor and to the defendant as non-marital or marital property, and such findings would have contributed to an award of interests had that part of the dissolution proceedings proceeded to finality. These are not uncomplicated matters of family law.[19]

The court does not need to decide the family and property law issues underlying the trustee's fraudulent transfer actions under Counts I and II. A final adjudication of the marital dissolution between the debtor and the defendant necessarily includes a determination of their respective property interests at operative times before and during the marriage, as well as a division and award of property interests upon the final dissolution. The dissolution action was commenced before the debtor filed his petition in bankruptcy, and the family court will now, with the resolution of this adversary proceeding, presumably determine the debtor's and the defendant's property interests in the currently stayed dissolution action.[20]

*No Benefit to the Estate*

---

[19] For the very reason of the complexity of the pending state court proceedings, and to avoid breaching the integrity of that process, this court's findings of fact are limited in effect to the matters considered here under federal law in the context of bankruptcy and are not intended to have any preclusive effect in the pending dissolution case.

[20] The state court in the Stipulated Partial Judgment and Decree to Dissolve Marriage and Grant Name Change, (the "State Court Order"), see Ramsey County District Court, State of Minnesota, Goodspeed v. Goodspeed, Case No. 62-FA-10-2501, and see notes 7 and 8, supra, specifically provides for reservation of jurisdiction over determining property interests of the debtor and the defendant: "The effect of this partial judgment and decree shall be strickly [sic] limited to those issues set forth herein. It shall have no effect whatsoever with regard to the allocation of property and debts between the parties in this proceeding, or upon the characterization as marital or nonmarital of any property or debts acquired or incurred before or during the marriage or after the decree of dissolution of marriage set forth herein. All issues apart from those set forth herein, or any other entitlement, debt or liability between the parties under Minn. Stat. § 518 or other applicable law are RESERVED for future proceedings." (Emphasis in original). The State Court Order also provides that "Trial was canceled at the request of the bankruptcy trustee, to enable the bankruptcy estate to determine its interest in the marital estate subject to this litigation." The state court litigation should now be able to proceed.

Even if the Transfer was avoidable pursuant to Minn. Stat. §§ 513.44 or 513.45, this appears to be the rare case where there would be no benefit to the bankruptcy estate to avoid and recover the Transfer. Section 550 of the Bankruptcy Code requires a trustee's recovery of an avoided transfer to be of benefit to the estate. See 11 U.S.C. § 550(a). While this case was under advisement, the trustee caused to be filed a notice in the main case which provides, in relevant part, that "[t]he amount on hand for distribution by the trustee exceeds the total amount of estimated administrative expenses and all claims which have been filed to date," and extended the deadline for filing claims.[21] The deadline has passed and no additional claims have been filed. As a result, and for the reasons discussed below, there is no benefit to the estate to be had by granting the relief requested in this adversary proceeding, that is, avoiding and recovering the Transfer.

(1) Recovery May Exceed Creditor Claims / Moore v. Bay Doctrine

It is well-settled that notwithstanding the limitations on a creditor's remedy under MUFTA,[22] a bankruptcy trustee proceeding under state law by application of 11 U.S.C. § 544(b) may avoid and recover the entire transfer (or its value) even if the qualified creditor would have been limited in his recovery under state law. See In re DLC, LTD., 295 B.R. at 606, citing Decker v. Voisenat (In re Serrato), 214 B.R. 219, 231 (Bankr. N.D.Cal. 1997). Sections 544(b) and 550(a) "of the Code are codifications of the Supreme Court's decision in Moore v. Bay." In re DLC, LTD., 295 B.R. at 602, citing Moore v. Bay, 284 U.S. 4 (1931). "In enacting section 544(b), Congress expressly rejected limiting the estate's recovery to the amount of a particular creditor's claims." In re DLC, LTD., 295 B.R. at 606, citing Committee of Unsec. Creditors of Interstate Cigar Co., Inc. v. Interstate Distrib., Inc. (In re Interstate Cigar Co., Inc.), 278 B.R. 8, 18 (Bankr. E.D.N.Y. 2002). "In other words, an entire transfer can be set aside even though the creditor's claim is nominal and, moreover, the recovery of the trustee is for the benefit of all creditors including those who had no right to avoid the transfer." In re DLC, LTD., 295 B.R. at 606, citing Liebersohn v. Internal Revenue Serv. (In re C.F. Foods, L.P.), 265 B.R. 71, 86 (Bankr. E.D.Pa. 2001) (citing 5 Collier on Bankruptcy ¶ 544.09[5] (1998)).

(2) Recovery May Not Benefit Only the Debtor

---

[21] The notice is not part of the trial record, but it is part of the record of the main bankruptcy case from which this adversary proceeding derived. Obviously, the trustee had notice of this information. As such, this is not the situation where a party is potentially adversely affected for lack of notice. Regardless, the outcome of this case is not dependent on this notice or the issue it raises. However, this reality of a surplus, assuming it is indeed reality, should be considered before further actions are taken, given that any avoidance would inappropriately benefit only the debtor, as discussed below.

[22] MUFTA sections 513.47 and 513.48 limit a fraudulent transfer recovery to avoidance only to the extent necessary to satisfy the creditor's claim, or, to the value of the asset transferred, but only whichever is less. See Minn. Stat. §§ 513.47-513.48. "MUFTA affords the district court considerable discretion to grant 'any ... relief the circumstances may require,' but such relief must be commensurate with the fraudulent transfer at issue." Phillips, 2014 WL 902683, citing Minn. Stat. § 513.47.

-13-

The recovery beyond the limitations of state law, however, must still provide a benefit to the estate, and not just a benefit to the debtor.  See Wellman v. Wellman, 933 F.2d 215, 218 (4th Cir. 1991).  Whether there is a benefit to the estate depends on a case-by-case, fact-specific analysis.  Id.  This is not the usual case in which an increase in dollars to the estate results in a patent benefit to the estate.  In this case, the increase in dollars to the estate which would result from the requested relief would not provide a benefit to the estate.  In this case, the trustee has advised that the amount on hand for distribution from the estate already exceeds the total amount of estimated administrative expenses and all claims.  Thus, in this case, the only party to benefit from avoiding and recovering the Transfer would be the debtor.

Such a benefit to the debtor would be inappropriate.  The provisions of MUFTA "protect creditors rather than transferors of debt."  See Bartholomew v. Avalon Capital Group, Inc., 828 F.Supp.2d 1019, 1025 (D. Minn. 2009).  "Only creditors are entitled to remedies under the UFTA."  Id., citing  Minn. Stat. §§ 513.47, 513.48(b).  Bankruptcy trustees (and debtors-in-possession) are the exception.[23]  "Courts have consistently held that an avoidance action can only be pursued if there is some benefit to creditors and may not be pursued if it would only benefit the debtor."  Balaber-Strauss v. Harrison (In re Murphy), 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005) citing Wellman, 933 F.2d at 218 (holding that there is no recovery for the benefit of the estate "'when the result is to benefit only the debtor rather than the estate'" (quoting 4 Collier on Bankruptcy ¶ 550.02 n. 3 (15th ed. 1979))); Join–In Int'l (U.S.A.) Ltd. v. New York Wholesale Distributors Corp. (In re Join–In Int'l (U.S.A.) Ltd.), 56 B.R. 555, 561 (Bankr. S.D.N.Y. 1986) ("[I]f the recovery of the alleged fraudulent conveyance will solely benefit the debtor it will not be permitted to maintain the proceeding."); 5 Collier on Bankruptcy ¶ 550.02[2] (15th ed. rev. 2004) ("Thus, in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit only the debtor rather than the estate.").

As stated in the Murphy decision, "Congress could not have intended Section 548 to abrogate state law obligations and allow debtors to avoid the state law consequences of their actions and to reap 'a windfall merely by reason of the happenstance of bankruptcy.'" Murphy, 331 B.R. at 124.  Under the facts of this case, where avoidance of the Transfer would benefit only the debtor, there is no benefit to the estate to recover the Transfer and it should not be recovered.  Moreover, doing so would constitute an unnecessary infringement upon the policy of the state law, as expressed by its terms, that the provisions of the fraudulent transfer act are intended to protect creditors, not transferors.  There is no federal bankruptcy interest in doing so when there is no harm to creditors.  See Murphy, 331 B.R. at 126.

Recovering the Transfer or its value is especially inappropriate in this case as it could constitute an unnecessary interference with the pending family court proceedings involving

---

[23] "Outside of a bankruptcy case, the remedies under Minnesota fraudulent-transfer law are available only to creditors of the debtor-transferor, and not to the debtor itself." See In re Minnesota Alpha Foundation, 122 B.R. 89, 95 (Bankr. D. Minn. 1990).  "In a bankruptcy case, of course, the 'strongarm' provisions of 11 U.S.C. § 544 vest a trustee or debtor in possession with avoidance powers available under state law to certain sorts of creditors." Id. (citations omitted).

material, substantive issues of state law which may be appropriately determined by the state court.  The bankruptcy court should not be a means to circumvent the family court's process of determining property interests and making awards of property in a marital dissolution proceeding when the only benefit to the bankruptcy estate would flow to the alleged transferor debtor-spouse.

## CONCLUSION

Regarding Counts I and II, the evidence failed to demonstrate the element of insolvency required by MUFTA.  And, even if the Transfer had been avoidable, it appears that its avoidance would not confer a benefit upon the estate as required by the Bankruptcy Code.

With respect to Counts III and IV of the complaint, the court elected to abstain.  Based upon the review of this entire matter, abstention from Counts III and IV should be by dismissal. There is no benefit to the estate to be gained based upon any outcome of those claims, and so there is no reason to expect that these matters will reappear in the bankruptcy context.[24]

Accordingly, IT IS ORDERED:

1.    The debtor's transfer on or around April 5, 2007, of his interest, if any, in cash proceeds arising out of real property equity loans and or refinancing loans, to the defendant, for purposes of purchasing real property in the state of Florida, was not a fraudulent transfer pursuant to Minn. Stat. §§ 513.45 or 513.44, and the trustee shall take nothing by her complaint on Counts I and II.

2.    The court abstains from Counts III and IV of the complaint and, for bankruptcy purposes, those counts are dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  *August 14, 2015*

/e/ Katherine A. Constantine
_____
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *08/14/2015*
Lori Vosejpka, Clerk, By jhn, Deputy Clerk

---

[24] "Generally, a stay rather than dismissal is the preferred mode of abstention where the possibility of a return to the federal court remains." In re Wayne Engineering Corp., 2008 WL 2356673 at 4, citing Capitol Indem. Corp. v. Haverfield, 218 F.3d 872, 874 n. 2 (8th Cir. 2000).  "Dismissal is appropriate, however, where there is no reason the case would return to this court." Id.  As matters of state law, "[t]he focus of the controversy here, lies there." In re Fifty Below Sales, 490 B.R. 885, 896 n.21.